PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiffs and the Proposed Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DOMINICK MARTIN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

HYUNDAI MOTOR AMERICA, a California entity, d/b/a HYUNDAIUSA.COM,

Defendant.

Case No. 8:26-cv-760

**CLASS ACTION COMPLAINT FOR VIOLATION OF B&P CODE SECTION 17529.5 (UNLAWFUL SPAMMING)**

## I. NATURE OF ACTION

1. Defendant Hyundai Motor America ("Hyundai") pays commissions to various "affiliate marketers" that spam unsuspecting victims without mercy. Hyundai's affiliate marketers send spam use falsified header information, spoofed domains and nonsensical sending addresses to evade spam filters. They also use false and deceptive subject lines – everything that makes people ***despise*** spam.

2. Fortunately, California's robust Anti-Spam Law imposes both strict liability and liquidated damages on entities like Hyundai that benefit from deceptive spam. It dispenses with the requirement of proving actual damages, intent, or scienter, and forces companies to actively monitor their e-mail promotions by imposing exceptionally broad liability.[1]

## II. PARTIES, JURISDICTION AND VENUE

3. Plaintiff is and was at all times mentioned herein a citizen of the State of California who has received misleading spam e-mail promoting Hyundai's automobiles.

4. Hyundai is a Delaware corporation that sells cars and various automotive services.

5. Hyundai deliberately outsources its solicitation to third-party affiliate marketers to reap the benefits of large-scale unlawful spamming. Hyundai financially incentivizes these affiliates — paying them on a per-lead or per-conversion basis — to flood inboxes with deceptive "discounts" on Hyundai products, knowing that aggressive, non-consensual email campaigns generate sign-ups. These affiliates are not rogue actors; they are integral to Hyundai's customer-acquisition strategy and are compensated

---

[1] *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (Section 17529.5 "impos[es] strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails"); *Id*. at 822 (Section 17529.5 "does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message"); Id at 821 ("Section 17529.5 … does not include any 'scienter' or intent requirement"); *Id*. at 820 ("[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails."

precisely because spam works. By structuring its marketing this way, Hyundai attempts to enjoy the profits of illegal email campaigns while plausibly denying responsibility for the very misconduct it knowingly authorizes, directs, and benefits from — conduct squarely prohibited by California Business & Professions Code § 17529.5.

6. This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states. Indeed, based upon publicly available information, the class is believed to include over 10,000 members located in all 50 states and the amount in controversy is believed to exceed $100 million.

7. Venue is proper in this District because a substantial portion of the events giving rise to the claim took place in this District.

## III. FACTUAL ALLEGATIONS

8. Plaintiff Dominick Martin is a California resident and citizen and is the owner of the e-mail address dleo2183@gmail.com. Hyundai spams him and other class members relentlessly. In the most recent example, in March of 2026 he received a spam e-mail from the address "info@bloombridgemedical.com" with the subject line **"GINA, Getting away with great deals is just the beginning"** That spam is attached hereto as Exhibit "A".

9. The spam was sent from a "spoofed" e-mail address "info@bloombridgemedical.com" to conceal the identity of the true sender and evade spam filters. Indeed, after receiving the e-mail, Plaintiff believed it was from one of his medical providers and clicked on the link. He then searched the publicly available WHOIS database to identify the sender associated with the domain, but found that the domain was registered to a seemingly random individual in Hyperabad, India that has not relationship to to Hyundai.

10. Plaintiff clicked on the link in the spam and was eventually taken to a landing page of Defendant's website at https://www.hyundaiusa.com/us/en/offers?utm_source=strong&utm_medium=email&utm_campaign=cww032603eml01. The landing page containing numerous tracking and attribution parameters demonstrates that the message was part of a coordinated affiliate marketing campaign rather than a one-off communication. The presence of fields such as campaign IDs, publisher identifiers, referral sources, and sub-ID parameters shows that the link was uniquely generated to track the recipient's click, attribute that traffic to a specific marketer or "publisher," and ultimately credit that affiliate for any resulting lead or transaction. This type of infrastructure is standard in affiliate networks and reflects a pay-for-performance model, where third-party marketers are incentivized to drive traffic — often through mass email campaigns — using tracked links supplied or approved by the advertiser. Because Hyundai receives, processes, and benefits from this tracked traffic, and has the ability to monitor and compensate the affiliate responsible, the link structure itself is strong evidence that the email was sent as part of an affiliate spam operation rather than independent or unsolicited conduct.

11. The email's metadata and embedded code reflect multiple indicia of spam evasion and deceptive marketing practices. The email contains numerous indicia of spam, deception, and evasion when analyzed at both the header and body level. ***First***, the sending identity is plainly falsified. ***Second***, this is compounded by authentication failures—earlier routing shows SPF softfail, DKIM failure, and DMARC failure—demonstrating that the sender is not authorized to send on behalf of the claimed domain, a classic indicator of spoofing or unauthorized transmission. ***Third***, the body of the email further reflects deceptive practices: all primary calls to action route through a link containing unique tracking parameters, evidencing an affiliate marketing or lead-generation scheme designed to attribute clicks and monetize recipients. ***Fourth***, the message is constructed as HTML-only with large stylized fonts, embedded images, and multiple duplicated links— features commonly used to evade text-based filtering and

maximize click-through rates. ***Fifth***, The email employs multiple deceptive and evasive techniques characteristic of unlawful spam, including image-based content with minimal readable text, mismatched multipart formatting, excessive empty HTML padding, invisible tracking pixels, and obfuscated encoding and link redirection, all designed to conceal its true content and origin while evading spam detection system. Sixth, the bottom of the e-mail suggests that it was sent by "Solution Hosting Providers LLC", which again has no relationship to Hyundai.

12. The preceding is just a single example of the spam that Defendant sends to class members. Based on publicly available sources, it is believed that Hyundai is responsible for over 100,000 spam e-mails to class members throughout the United States in all fifty states who use "California e-mail addresses" as defined by the statute.

13. Plaintiff's e-mail address is a "California e-mail addresses" because Plaintiff ordinarily accesses the e-mail address from computers in California. *See* Bus. & Prof. Code § 17529.1(b).

14. The spam identified above is an "Unsolicited Commercial e-mail advertisement" because plaintiff had no pre-existing relationship with Defendant and because the e-mail was initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(c).

15. Plaintiff never gave "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents. Indeed, "direct consent" under the statute requires a unique level of specificity and clarity that must be informed, knowing, and explicit — meaning that consumers must be told clearly that they are agreeing to receive advertising emails from a particular sender, and for what purpose, at the time they provide their email address.

16. The above spam violates Bus. & Prof. Code § 17529.5 in three separate and distinct ways:

a. **<u>Unauthorized Use of a Domain Name in Violation of Section 17529.5(a)(1).</u>** The spam employs a falsified domain as part of a deliberate effort to conceal the sender's true identity and evade authentication controls, which is a hallmark of unlawful spam. The actual sending address makes it appear as though the spam comes from a medical provider (info@bloombridgemedical.com) that bears no legitimate connection to Defendant, indicating that the domain was created solely for transient bulk-email use rather than for any bona fide business purpose. This deception is reinforced by authentication failures reflected in the headers—SPF softfail, DKIM failure, and DMARC failure—which demonstrate that the sender was not authorized to send on behalf of the claimed identity and that the domain lacks proper alignment with the "From" representation. The use of such disposable or fabricated domains is a well-known spam tactic designed to avoid detection, prevent accountability, and frustrate recipients' ability to identify or contact the actual advertiser, thereby rendering the transmission materially misleading as to its origin in violation of California Business & Professions Code § 17529.5.

b. **<u>Misrepresented Header Information In Violation of Section 17529.5(a)(2).</u>** The email contains misrepresented header information in violation of Business and Professions Code § 17529.5(a)(2) because the header data was deliberately structured to conceal the true sender and prevent the recipient from identifying or tracing the advertiser responsible for the message. In addition to being from a spoofed e-mail address, the email's header information reflects clear signs of forgery and manipulation designed to obscure the true origin of the message and mislead recipients. The header show inconsistent routing through third-party infrastructure and conflicting sending domains, coupled with authentication failures—including DKIM failure and lack of DMARC alignment—which indicate

that the cryptographic signatures meant to verify the sender's identity either do not match or were improperly applied. Additionally, the presence of multiple, mismatched "Received" entries and intermediary relays, along with indicators such as Barracuda filtering tags and anomalous source IP attribution, demonstrate that the message was transmitted through systems not legitimately tied to the purported sender. These discrepancies are characteristic of forged or spoofed header information, where the visible sender identity is fabricated while the underlying technical data betrays an unauthorized and deceptive transmission path, rendering the email materially misleading as to its origin.

17. Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct. Plaintiff spent valuable time and attention investigating the misleading offer; searching the WHOIS database to learn who the e-mail came from; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage on a metered data plan, and battery life.

18. The unauthorized domain name and misleading header also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful email and are redressable by statutory and injunctive relief.

19. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements.

## IV. CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action on behalf of all persons similarly situated and seeks certification of the following class:

**All persons within the United States who received any commercial e-mail promoting any Hyundai product or service at a California e-mail address where such email(s) contained: (1) a falsified, misrepresented, or forged domain name; (2) falsified, misrepresented, or forged header information; or (3) false or misleading subject line or contents.**

21. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

22. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 100,000 members of the Class.

23. **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct described herein.

24. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

25. **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be

determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether Defendant sent unsolicited commercial e-mail to Class members;

b. Whether Defendant sent such messages using forged headers, falsified domains, and spoofed e-mail addresses.

26. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

27. **Ascertainability**. Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

28. Plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

29. As shown above, the spam violated one or more provisions of Section 17529.5.

30. Defendant is strictly liable for violation of Section 17529.5 for sending spam and is liable in the amount of $1,000 per spam per class member.

31. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

32. Plaintiff and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. For an order certifying that the action be maintained as a class action, that Plaintiff be designated as class representative, and that undersigned counsel be designated as class counsel;

b. For all available declaratory, legal, and equitable relief including injunctive relief;

c. For statutory damages;

d. For punitive damages;

e. For attorneys' fees and costs as allowed by law; and

f. For any and all other relief at law or equity that may be appropriate.

Dated: March 30, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: */s/ Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class